UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

SK b/n/f GINA KILDAHL,
And on behalf of themselves and
those similarly situated

        Plaintiff,

v.                                       Case No. 3:21-CV-637

SCHOOL DISTRICT OF FALL CREEK,
et. al.,

        Defendants.

---

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

---

### <u>INTRODUCTION</u>

      Plaintiff, SK b/n/f Gina Kildahl, brings this lawsuit against the School District of Fall

Creek, its superintendent, and its Board of Education and the individual board members[1]

(collectively, the "District'), alleging that the District violated SK's constitutional rights by not

making masks mandatory in District schools.  Plaintiff's Complaint is far from clear, but it appears

that he is attempting to assert a 42 U.S.C. § 1983 claim based on a strained application of the state

created danger and special relationship exceptions recognized in *DeShaney v. Winnebago County*

---

[1] A public school district board of education is not a separately suable entity apart from the school and naming it separately is redundant of the suit against the District.  *See Humphries v. Milwaukee Cty.*, No. 10-CV-99-JPS, 2011 U.S. Dist. LEXIS 130714, at *16 n.4 (E.D. Wis. Nov. 10, 2011); *Save Our Sch.-Southeast & Ne. v. D.C. Bd. of Educ.*, No. 04-01500 (HHK), 2006 U.S. Dist. LEXIS 45073, at *24 (D.D.C. July 3, 2006) (stating that a school board of education is not a separate suable entity).  Likewise, the superintendent and individual board members, Brock Wright, Eric Ryan, AnnMarie Anderson, Jill Geske, Courtney Kneifl, and Joe Sanfelippo, are all sued in their official capacities, which is also redundant because "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

*Department of Social Services*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989).  Plaintiff also alleges a claim for state law public nuisance.[2]  Finally, Plaintiff purports to bring this case as the representative for an unnamed class of plaintiffs against an unnamed group of Wisconsin school districts.  He brings these class claims even though his counsel has previously filed such class claims in another earlier-filed lawsuit in the Eastern District of Wisconsin.  It is unclear why he seeks to create a competing class action claim in this case.

Plaintiff's Complaint fails on all claims.  Undoubtedly whether to require masks is a hotly contested political issue, and Plaintiff falls in the pro-mask camp.  Plaintiff wants to force his political position upon every family in the District, replacing his judgment for that of the elected Board of Education.  The Complaint fails to provide any significant factual details.  But, assuming the limited facts as true, the central allegations are that SK contracted COVID-19 while in school and that the District did not have a mandatory masking requirement.  While unfortunate, a student attending public school in person has an inherent risk of contracting COVID-19 regardless of whatever mitigation strategies are implemented.  Contracting COVID-19 does not establish a claim for a violation of constitutional rights and allowing in person education without masks is not a nuisance as a matter of law.  Lastly, because Plaintiff cannot state a claim for relief, he cannot maintain an action on behalf of a purported class of plaintiffs or against a class of defendants.

---

[2] In the event Plaintiff's federal claim is dismissed, courts generally dismiss the state law claims without prejudice rather than take supplemental jurisdiction over the state law claims.  *See A.M.C. v. Sch. Dist. of La Crosse*, No. 18-cv-175-bbc, 2018 U.S. Dist. LEXIS 167068, at *17 (W.D. Wis. Sep. 28, 2018) (citing 28 U.S.C. § 1367(c)(3)) (explaining that "the general rule is that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial").

## SUMMARY OF ALLEGATIONS[3]

The non-conclusory, well-plead facts, specific to Plaintiff are set forth as follows. SK is a student at Fall Creek Elementary School in the District.[4] Compl. [ECF 1], ¶ 5. During the spring of 2020, the District held classes remotely. *Id.* at ¶ 40. During the 2020-2021 school year the District returned to in person learning. *Id.* While the District had a policy in place in the 2020-21 school year requiring everyone to wear masks, masks were made optional for the 2021-2022 school year. *Id.* at ¶¶ 41-42. During the 2021-2022 school year SK wore a mask to school and some of SK's classmates chose not to. *See id.* at ¶¶ 43. Two of SK's classmates tested positive for COVID-19 in September 2021 and SK tested positive for COVID-19 on September 27, 2021. *Id.* at ¶¶ 45-48.

## MOTION TO DISMISS STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). A court, in examining a pleading under Fed. R. Civ. P. 12(b)(6), conducts a two-step inquiry. First, the Court should discard all legal conclusions from the pleading, and second, as to the remaining factual allegations, the Court should test the sufficiency of the facts pled to determine whether they provide the necessary "factual enhancement" to push the claim across the line from a mere possibility of entitlement to relief into the territory of plausibility of entitlement to relief. *Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678–79. Stated another way, a complaint

---

[3] While the facts in the Complaint must be relied upon in bringing this motion to dismiss, the District does not admit any of the allegations and reserves the right to contest the same in the future.
[4] Plaintiff incorrectly identifies Fall Creek Elementary School as in the Waukesha school district.

must include sufficient "factual enhancement" to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 557. A complaint that fails to do so "must be dismissed." *Id*.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. It is not enough for a plaintiff to plead facts that are "merely consistent with" liability "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotations omitted).

A plaintiff cannot survive dismissal by making conclusory allegations that the elements of a claim have been satisfied. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *id*., and "a plaintiff's obligations to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 687.

## ARGUMENT

## I. THE EQUAL PROTECTION CLAIM FAILS BECAUSE THERE ARE NO ALLEGATIONS OF DISCRIMINATION AND THE FACTS PLEAD DO NOT INVOKE THE EQUAL PROTECTION CLAUSE.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or the laws of the United States, and that this

deprivation occurred at the hands of a person or persons acting under the color of state law. *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009).

The source of Plaintiff's alleged constitutional right is confounding. Although "a complaint need not identify legal theories," it nonetheless must allege some facts that support a viable claim for relief including facts that would support whatever theory the plaintiff asserts in the face of a motion to dismiss. *Abraham v. State Farm Mut. Auto. Ins. Co.*, No. 19-cv-3028, 2021 U.S. Dist. LEXIS 63099, at *6 (N.D. Ill. Mar. 31, 2021) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 635 (7th Cir. 2013)). Plaintiff identifies a claim under the Equal Protection Clause, but then attempts to invoke the state created danger and special relationship doctrines which apply to substantive due process claims, not to equal protection claims. This approach is confusing and deficient.

While Plaintiff labels his causes of action as a violation of equal protection, there are no facts to support such a claim, especially considering his apparent attempt to invoke the exceptions from *DeShaney*. The special relationship doctrine and state created danger exception are not part of an equal protection analysis. *See Bond v. Atkinson*, 728 F.3d 690, 691 (7th Cir. 2013). Rather, an equal protection claim based on a failure to protect is only viable to address a very narrow situation: when the state chooses to provide protective services, it cannot protect one class of citizens and not protect others. *See id.* ("A state is not obliged to protect residents from crime (that's the holding of *Castle Rock* and *DeShaney*), but when the state chooses to provide protective services it cannot protect men while failing to protect women."). "The state must provide *equal* protection of the laws, without discriminating on account of race, sex, religion, or other criteria the Constitution places off limits." *Id.*

In other words, although "[g]enerally, there is no constitutional right, either in the due process clause or the equal protection clause, to be protected against being attacked or raped by a member of the general public," *Lowers v. City of Streator,* 627 F. Supp. 244, 246 (N.D. Ill. 1985), an exception arises where the state "selectively den[ies] its protective services to certain disfavored minorities" in "violat[ion of] the equal protection clause." *Moore v. City of Chi. Heights*, No. 09 C 3452, 2010 U.S. Dist. LEXIS 2566, at *6-7 (N.D. Ill. Jan. 12, 2010); *see also Nabozny v. Podlesny,* 92 F.3d 446, 456 n. 7 (7th Cir. 1996) (explaining that "the Court's reasoning in *DeShaney* is inapplicable to Nabonzy's equal protection arguments. As the Court noted in *DeShaney,* 'the State may not, of course, selectively deny its protection services to certain disfavored minorities without violating the Equal Protection Clause'").

Here, the Complaint is silent as to any facts that would invoke this limited application of equal protection. There are no allegations that SK is a member of a protected class or that the District is offering greater levels of protection to one class of students and not another. There are no allegations of discrimination in the Complaint. The only possible explanation is that Plaintiff incorrectly labeled his alleged constitutional right as one arising under Equal Protection. To the extent Plaintiff seeks to assert such a claim, the Complaint utterly lacks any facts to plausibly suggest that he has an equal protection cause of action and it must be dismissed.

## II.     THERE IS NO SUBSTANTIVE DUE PROCESS CLAIM BECAUSE THE CONSTITUTION DOES NOT GUARANTEE ONES' SAFETY AND SECURITY.

Plaintiff alleges that the District created a danger to SK while he attended school and that there was a special relationship between SK and the District. Compl., ¶¶ 51, 66. While not labeled as a substantive due process claim, the Complaint appears to assert that the District violated SK's right to substantive due process when he contracted COVID-19 while attending school. *Id.* at ¶¶ 63, 72.

The Due Process Clause of the Fourteenth Amendment prevents the state from infringing on an individual's right to life, liberty, or property. *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Nevertheless, the Due Process Clause does not "impose an affirmative obligation on the [s]tate to ensure that those interests do not come to harm through other means." *Id.* In other words, the Due Process Clause limits the state's power to act but does not act "as a guarantee of certain minimal levels of safety and security." *Id.* at 195. In fact, the purpose of the Due Process Clause "was to protect the people from the state, not to ensure that the state protected them from each other." *Id.* at 196. Thus, the Due Process Clause generally confers "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *Id.*

Because the Due Process Clause does not act to ensure that the state protect people, the failure to protect an individual against harm does not constitute a violation of the Due Process Clause. *See id.* at 197 (holding as a rule that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause"). The Seventh Circuit and the Supreme Court have repeatedly applied this rule and have rejected attempts to read the Due Process Clause as an affirmative charter of governmental duties. *See J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990).

There are limited exceptions to the principle that the state does not have an affirmative duty to protect citizens—the "special relationship" doctrine and the "state created danger exception." *See D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015). Plaintiff apparently attempts to invoke these exceptions to avoid the general principle. Neither exception, however, is easy to establish, and Plaintiff falls far short of alleging facts that plausibly suggest that either exception may be invoked in this case.

**A.    The "Special Relationship" Doctrine Does Not Apply Because There Is No Custodial Relationship Between Students And Public Schools.**

The special relationship doctrine obligates the state to protect individuals with whom it has a "special relationship." *See D.S.*, 799 F.3d at 798.  A special relationship is one where the state has custody of a person, thus cutting off alternate avenues of aid.  *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 708 (7th Cir. 2002).

The Supreme Court has only recognized two situations where the state has custody of a person that creates a "special relationship"—incarcerated prisoners and involuntarily committed mental patients.  *See J.O.*, 909 F.2d at 272 ("But beyond the case of incarcerated prisoners and involuntarily committed mental patients, the Supreme Court has never recognized such a duty.").  The state's custody over the person is the most distinguishing characteristic in the cases of the involuntarily committed mental patient and the prisoner; these people are unable to provide for basic human needs like food, clothing, shelter, medical care, and reasonable safety.  *See id.* (citing *DeShaney,* 109 S.Ct. at 1005).

The Supreme Court has never recognized a school as having a special relationship with its students.  And, notably, the Seventh Circuit has explicitly rejected that proposition, holding that public schools have no "special relationship" with students and no affirmative duty under the Substantive Due Process Clause to protect them from injuries.  *See J.O.*, 909 F.2d at 272; *Stevens v. Umsted*, 131 F.3d 697, 702–03 (7th Cir. 1997); *Werth v. Bd. of Directors of Pub. Sch. of City of Milwaukee*, 472 F. Supp. 2d 1113, 1124 (E.D. Wis. 2007).  "At most, the state might require a child to attend school . . . but it cannot be suggested that compulsory school attendance makes a child unable to care for basic human needs.  The parents still retain primary responsibility for feeding, clothing, sheltering, and caring for the child." *J.O.*, 909 F.2d at 272.

Most federal circuits agree with the Seventh Circuit's determination "that public schools do not have a special relationship with their students, as public schools do not place the same restraints on students' liberty as do prisons and state mental health institutions." *Doe ex. rel. Magee v. Covington County School Dist. ex. rel. Keys*, 675 F.3d 849, 858 (5th Cir. 2012); *see, e.g.*, *Hasenfus v. LaJeunesse*, 175 F.3d 68, 69–72 (1st Cir. 1999) (fourteen-year-old student attempted suicide after being sent unsupervised to a locker room); *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1366, 1370–73 (3d Cir. 1992) (en banc) (sixteen-year-old student was sexually assaulted by fellow students in unisex bathroom and darkroom, both of which were part of classroom where teacher was present during attacks); *Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 27, 30–31 (4th Cir. 2001) (ten-year-old student assaulted by his classmates); *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 500–01, 509–10 (6th Cir. 1996) (fourteen-year-old student sexually assaulted by an athletic coach off school grounds); *Dorothy J. v. Little Rock Sch. Dist.*, 7 F.3d 729, 731–34 (8th Cir. 1993) (intellectually disabled high school boy was sexually assaulted by another intellectually disabled student); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 968–69, 972–74 (9th Cir. 2011) (developmentally disabled high school student was sexually assaulted by classmate when she was permitted to use restroom alone even though her parents specifically requested that she be under adult supervision at all times due to her disability); *Maldonado v. Josey*, 975 F.2d 727, 728, 729–33 (10th Cir. 1992) (eleven-year-old boy died of accidental strangulation in an unsupervised cloakroom adjacent to his classroom during the school day); *Worthington v. Elmore Cty. Bd. of Educ.*, 160 F. App'x 877, 878, 881 (11th Cir. 2005) (child sexually assaulted by another student on his special education school bus).

Plaintiff's attempt to invoke the special relationship exception fails as a matter of law. It is simply beyond debate that "the [special relationship] exception does not extend to groups such

as children or students, even though they are more vulnerable and less able to fend for themselves." *Edwards v. Sch. Dist. of Baraboo*, 570 F. Supp. 2d 1077, 1084 (W.D. Wis. 2008) (citing *Nabozny*, 92 F.3d at 459; *J.O.*, 909 F.2d at 272–73).

Plaintiff attempts to invoke the special relationship doctrine by arguing that the District "deliberately assumed control over SK's physical welfare as it related to the Covid-19 pandemic and created a 'special relationship' with him." Compl., ¶ 68. Not only does this position conflate the special relationship doctrine with the state created danger exception, but it also flies in the face of established Supreme Court and Seventh Circuit jurisprudence. No matter the situation, it has always been held that a public school district never has a special relationship with a student because ultimately it is the parent's choice whether to send the child to school. "Schools, both general and restrictive, have some measure of come-and-go and leave some ability for students to engage in self-help, so they aren't custodial in a way that triggers a duty to protect." *Martin v. E. St. Louis Sch. Dist. #189*, No. 14-cv-1393-MJR-SCW, 2016 U.S. Dist. LEXIS 57334, at *9 (S.D. Ill. Apr. 29, 2016) (citing *Stevens*, 131 F.3d at 703-04; *Middle Bucks*, 972 F.2d at 1372-73; *J.O.*, 909 F.2d at 272-73). Public schools cannot be equated to prisons or facilities for the involuntarily committed.

This point is emphasized by the Seventh Circuit's decision in *Stevens*, where a developmentally disabled student who was also visually impaired was repeatedly sexually assaulted by other students while he attended a state operated residential school for children with visual, hearing, and developmental difficulties. 131 F.3d at 699-700. The plaintiff alleged that the school was aware of the sexual assaults but failed to take any action to prevent further sexual assaults. *See id.* at 700. The Seventh Circuit held that no special relationship existed because the student "was not taken into custody by the state" and "was voluntarily admitted to the [school],

either on the application of his school district or directly by his parents, but in either instance it was with the signed consent of his parents." *Id.* at 703. Additionally, the Court noted that the state never became the legal guardian of the student, and his father retained legal custody of him. *Id.* Although the student "could not have packed his bags and left the school on his own volition," his parent and guardian, could have requested that the student be discharged at any time. *Id.*

Even though the student in *Stevens* was developmentally disabled and visually impaired, the Seventh Circuit upheld the dismissal of the complaint for failure to state a claim emphasizing that "the government, acting through local school administrations, has not rendered its schoolchildren so helpless that an affirmative constitutional duty to protect arises." *Id.* (citing *J.O.*, 909 F.2d at 272). Plaintiff is no less helpless, and the District did not have an affirmative constitutional duty to protect him.

In sum, there is an overwhelming body of authority that supports the conclusion that a public-school student, no matter the circumstances surrounding their education, is not sufficiently within the state's custody as to invoke the special relationship doctrine. There was no special relationship between SK and the District, and Plaintiff has not plead any facts to avoid this conclusion. Plaintiff's Complaint states nothing more than the fact that SK was a traditional student within a public school. Thus, all the ancillary facts plead in the Complaint are entirely irrelevant to whether the special relationship doctrine can be invoked. SK was not institutionalized. His parent voluntarily placed him with the District and could have removed him at any time. The weight of authority teaches that no special relationship exists, and this cause of action must be dismissed.

**B.      Plaintiff Cannot Establish That The "State Created Danger" Exception Exists.**

The other exception to *DeShaney* is the "state-created danger exception," which applies when a state actor's conduct "creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger that they otherwise would have been." *D.S.*, 799 F.3d at 798 (citing *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993)). To prevail under such a theory, a plaintiff must show that (1) the state by its affirmative acts created or increased a danger to him, (2) the state's failure to protect him from danger was the proximate cause of his injury, and (3) the state's failure to protect him shocks the conscience. *Wilson-Trattner v. Campbell*, 863 F.3d 589, 593 (7th Cir. 2017). This is a narrow doctrine that applies only in "rare and often egregious" circumstances. *Id.*

The state created danger exception typically deals with the government's failure to protect a victim from the "criminal actions of third parties," and at least one court has commented that it would be a "stretch" to apply this exception to protecting individuals from contracting COVID-19 from other people. *See Gayle v. Meade*, No. 20-21553, 2020 U.S. Dist. LEXIS 71953, at *74 (S.D. Fla. Apr. 22, 2020) (discussing that it would be a stretch to consider immigration detainees with COVID-19 to be the third parties from whom ICE should be providing protection, "because a detainee with the virus, especially a detainee who has no symptoms . . . is significantly different than a *criminal*"). Even assuming the well-plead allegations in the Complaint as true, Plaintiff has failed to plead facts to show that any of the elements of the state created danger exist.

1.      **Plaintiff cannot point to an affirmative act that created or increased the danger to SK, and therefore, the state created danger exception does not apply here.**

For the Due Process Clause to impose a duty on a state actor to protect its citizens, the state actor, by its affirmative acts, must create or increase a danger faced by an individual. *King ex rel.*

*King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 817-18 (7th Cir. 2007). In other words, to state a claim under this "state-created danger" theory, "a plaintiff must plead facts showing some affirmative act on the part of the state that either created a danger to the plaintiff or rendered him more vulnerable to an existing danger." *Stevens*, 131 F.3d at 705.

The Seventh Circuit has cautioned that when applying the state created danger theory, courts must be mindful that when analyzing whether the state acted to create or increase the danger, the analysis "must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect and thus circumvent *DeShaney's* general rule." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015). The Seventh Circuit went on to point out that: "When courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Id.* (internal citations omitted).

Plaintiff's Complaint does not set forth any facts to show that the District created a danger or turned a potential one into an actual one. Rather, the only allegation is that the District returned to in person learning and extracurricular activities and did not mandate masks in the school building. *See* Compl., ¶¶ 54-58. Thus, the "danger" allegedly created by the District was bringing "their students back to school and reinstating in person learning." *Id.* at ¶ 54.

Plaintiff's claim is entirely misguided. Any argument that the District created the COVID-19 pandemic is ridiculous. *See Berry v. Hennepin Cty.*, No. 20-cv-2189 (WMW/JFD), 2021 U.S. Dist. LEXIS 184337, at *30 (D. Minn. Sep. 27, 2021) (dismissing the plaintiff's state created danger claim because the "COVID-19 pandemic, although dangerous, were not created by the state").

Furthermore, the District did not take the potential danger of contracting COVID-19 and make it an actual one. Plaintiff compares opening for in person learning to throwing students into a COVID-19 "snake pit" that created an affirmative duty to somehow prevent students from contracting the virus. *See* Compl., ¶ 58. At its core, the Complaint only alleges that the District should have implemented different mitigation measures, such as universal masking. However, failure to act is never enough to establish this first element because "[i]naction by the state in the face of a known danger is not enough to trigger the obligation [to protect private citizens from each other]." *Stevens*, 131 F.3d at 705 (citing *Reed*, 986 F.2d at 1125); *see also See Werth*, 472 F. Supp. 2d at 1124 ("Affirmative conduct, not mere inaction, is required.").

Plaintiff attempts to create the appearance that the District engaged in affirmative acts, but those allegations merely implicate a failure to implement. For example, claims that the District, reinstituted in person learning, resumed extracurricular actives, and did not require universal masking, while phrased to sound like action, are just claims that the District failed to implement mitigation measures that Plaintiff deems adequate. *See Keener v. Hribal*, 351 F. Supp. 3d 956, 974 (W.D. Pa. 2018) (holding that claim that the school district "failed to develop and implement adequate safety procedure" was an attempt to "couch inaction as affirmative acts").

Inaction does not implicate the state created danger theory. The cases that have applied this exception involved situations where the state has taken affirmative steps to place the victim in a dangerous position that they otherwise would not have faced. *See, e.g.*, *White v. Rochford,* 592 F.2d 381, 382 (7th Cir. 1979) (the police arrested a driver for drag racing and left children stranded alone in the car on a busy highway on a cold night); *Reed*, 986 F.2d at 1127 (police officers could be held liable under the state-created danger exception where they arrested a sober driver and left behind an obviously drunk passenger with the keys to the vehicle who later caused a collision,

injuring the plaintiffs); *Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998) (a police officer took responsibility for preventing release of a tape recording of an informant's anonymous tip but then went deer hunting instead of taking standard steps to prevent the tape's release despite knowing that the release would place the informant in heightened danger, and the informant was killed); *Paine v. Cason*, 678 F.3d 500, 511 (7th Cir. 2012) (police arrested a woman in a safe place and released her in a hazardous one while she was unable to protect herself); *Maxwell v. School District of City of Philadelphia*, 53 F. Supp. 2d 787, 793 (E.D. Pa. 1999) (defendants locked victim in a room with her attacker). In each of these cases, the state actor took affirmative action that created the danger.

Merely permitting in-person school and not requiring masks is not the type of affirmative act that could trigger the state created danger exception. The risk of harm from COVID-19 was no greater at school than in any other public location. The District did take any affirmative steps to make SK more susceptible to contracting COVID-19. It did not knowingly permit students with positive tests to remain in school, it did not knowingly confine SK with students who had COVID-19, and it did not prevent SK from wearing a mask. The District did not increase the risk of harm to SK beyond what he would have faced if the District had taken no action at all. Even assuming the facts plead as true, Plaintiff cannot show the first element of a state created danger claim.

### 2. <u>Plaintiff does not plead facts to show proximate cause: there are no facts that show that SK would foreseeably contract COVID-19.</u>

The second element of the "state created danger" exception is that the plaintiff can show that he or she was a foreseeable victim of a defendant's acts, i.e., the state's affirmative acts were the proximate cause of the injury to the individual. *King*, 496 F.3d at 818; *see also Kneipp v. Tedder*, 95 F.3d 1199, 1209 n.22 (3d Cir. 1996) ("[T]he state-created danger theory contemplates some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense.").

To sufficiently plead the second element, a plaintiff must allege facts plausibly suggesting that he or she was a foreseeable victim of the defendant's acts. *Buchanan-Moore*, 570 F.3d at 828.

Foreseeability depends on the fact that the dangers presented are familiar and specific and that the threat of harm to victims is limited in both time and scope. *Id.* A generalized risk of indefinite duration and degree is insufficient. *Id.* at 828-29. Dangers to the public at large are insufficient for constitutional purposes. *Id.* at 828 (finding no facts to show that the defendants knew the plaintiffs faced any special danger as distinguished from the public at large).

Plaintiff concludes that the District's "refusal to implement reasonable Covid-19 mitigation measures was the direct and proximate cause of SK's infection and illness." Compl., ¶ 59. Nevertheless, Plaintiff sets forth no facts to support such a conclusion. COVID-19 is a danger to the public at large. There are no facts that show that SK as an individual was likely to contract COVID-19 if the District permitted voluntary in person schooling without mandating masks for all students and staff. SK could realistically have been infected anywhere, not just during school as the risk of COVID-19 is generalized and of indefinite duration. There are no facts to show the District knew SK faced any special risks regarding COVID-19 as distinguished from the public at large. Thus, the Complaint fails to allege facts to establish the second element of the state created danger test.

### 3. The Complaint fails to allege any facts that would shock the conscience.

The third element of the "state created danger" test is that the failure to protect the individual must "shock the conscience." *King*, 496 F.3d at 818. The Seventh Circuit has held that "only the most egregious official conduct will satisfy this stringent inquiry." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654 (7th Cir. 2011); *see also Estate of Allen v. City of Rockford,* 349 F.3d 1015, 1022 (7th Cir. 2003) (stating that "cases in which we have either found or suggested that liability attaches under the state-created danger exception are rare and often

egregious"). State action that shocks the conscience is conduct that may be deemed "arbitrary in the constitutional sense" and that only "the most egregious official conduct" will satisfy this inquiry. *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

> The Seventh Circuit explained in *King* that:

> The Supreme Court has noted that this standard lacks precise measurement, but has stated that the emphasis on whether conduct shocks the conscience points toward 'the tort law's spectrum of liability.' *Lewis*, 523 U.S. at 847–48, 118 S.Ct. 1708. Only conduct falling toward the more culpable end of the spectrum shall be found to shock the conscience. *Id.* at 849, 118 S.Ct. 1708. Thus, when the circumstances permit public officials the opportunity for reasoned deliberation in their decisions, we shall find the official's conduct conscience shocking when it evinces a deliberate indifference to the rights of the individual. *See id.* at 851, 118 S.Ct. 1708; *Armstrong v. Squadrito*, 152 F.3d 564, 576–77 (7th Cir. 1998).

496 F.3d at 818-19.

Deliberate indifference is a "conscious disregard of known or obvious dangers." *Armstrong v. Squadrito*, 152 F.3d 564, 577 (7th Cir. 1998) (internal citations omitted); *see also Bryan Cnty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (observing that deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action"). "Making a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson*, 653 F.3d at 654 (internal citations omitted).

Here, there are no facts in the Complaint that even suggest that the District knew that SK was going to contract COVID-19 but ignored the risk and exposed SK to it. There are also no allegations in the Complaint that come remotely close to implicating the shocks the conscious standard. At best, the Complaint alleges that SK would have been less likely to contract COVID-19 if the District instituted mandatory masking as opposed to optional. However, SK could have

contracted COVID-19 from anyone at school or from any member of the public at any other place he visited, regardless of whether anyone was wearing a mask at school.

School districts are faced with a host of considerations and are almost always given the constitutional autonomy to make decisions for the best of the student body at large. *See Hardwick v. Heyward*, 711 F.3d 426, 440 (4th Cir. 2013) ("Because school officials are far more intimately involved with running schools than federal courts are, it is axiomatic that federal courts should not lightly interfere with the day-today operation of schools.") (internal citations omitted). Permitting optional masking or not implementing any particular mitigation measure, even if recommended by the CDC or DPI, is not against the law and does not meet the high standard for conscience-shocking conduct.

Thus, with a complete lack of facts that demonstrate conscience-shocking affirmative conduct, Plaintiff's Complaint also fails to plead the third element of the state created danger claim and this cause of action must be dismissed.

## III. PLAINTIFFS' STATE LAW NUISANCE CLAIM FAILS AS A MATTER OF LAW.

The elements of a public nuisance action are provided for in Wisconsin Jury Instruction—Civil 1928:

> First, a public nuisance exists. A public nuisance is a condition or activity which unreasonably interferes with the use of a public place or with the activities of an entire community;

> Second, the interference resulted in harm to the plaintiff that was both (1) significant, and (2) different from the harm suffered by other members of the public exercising the common right that was the subject of interference;

> Third, the defendant was negligent;

> Fourth, defendant's negligence caused the public nuisance. This does not mean that defendant's negligence was '*the* cause' but rather 'a cause' because a public nuisance may have more than one cause. Someone's negligence caused the public nuisance if it was a substantial factor in producing the public nuisance.

A public nuisance is a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community. *See Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2002 WI 80, 254 Wis. 2d 77, 102-03, 646 N.W.2d 777, 788-89. In evaluating the existence of a public nuisance, the court considers many factors, "including, among others, the nature of the activity, the reasonableness of the use of the property, location of the activity, and the degree or character of the injury inflicted or right impinged upon." *Id.* To establish liability for creating a public nuisance, a plaintiff must prove that the defendant's conduct was a substantial cause of the existence of a public nuisance and that the nuisance was a substantial factor in causing injury to the public, which injury is the subject of the action but liability for creating a public nuisance can be limited on public policy grounds. *See City of Milwaukee v. NL Indus.*, 2005 WI App 7, ¶12, 278 Wis. 2d 313, 691 N.W.2d 888.

Plaintiff fails to plead facts to plausibly suggest that merely maintaining in person learning in a District school unreasonably interfered with the public at large or that the harm to SK was different from the public. There are also no non-conclusory factual allegations of negligence or causation. Plaintiff's allegations related to this cause of action are limited to a conclusory statement that by holding classes without adequate COVID-19 mitigation measures, the District is "exposing the public to Covid-19, interfering with the general public's right to be free from unnecessary exposure to infectious diseases like Covid-19, and endangering public health." Compl., ¶ 81. The fact that the claims are limited to a specific school within the District, means that the alleged nuisance is not impacting the community. This is evident because public places throughout the state are dealing with the same challenges presented by the pandemic.

Courts that have addressed the allegations that a workplace constituted a public nuisance by not taking adequate COVID-19 mitigation measures, have all held that an employer cannot be

responsible for possible exposure under a nuisance theory. For example, a court rejected a plaintiff's claim that Walmart's policies cause an increased risk of exposure of COVID-19 to the public because its distribution facility "is not the source of the COVID-19 virus. The public cannot avoid COVID-19 simply by avoiding Walmart's distribution facility, its surrounding area, and its employees. The risk of exposure to COVID-19 is, unfortunately, present everywhere." *See Wicker v. Walmart, Inc.*, No. 5:20-cv-02166-JWH-KKx, 2021 U.S. Dist. LEXIS 148909, at *7-8 (C.D. Cal. Apr. 12, 2021) (internal citations omitted).

Likewise, in *Palmer v. Amazon.com, Inc.*, the district court explained the inapplicability of a nuisance cause of action based on the COVID-19 pandemic:

> Here, plaintiffs' alleged injuries are that they have an increased risk of contracting COVID-19 and fear of the same because they work in conditions, or live with someone who does, that increase the risk of spread of COVID-19. This injury is common to the New York City community at large. Plaintiffs and the public alike face varying levels of risk of exposing themselves and the people they live with to the virus. Unlike the noxious landfill, a malarial pond, or a pigsty, JFK8 is not the source of COVID-19, emitting the virus from a single source into an otherwise healthy world. The public at large cannot avoid COVID-19 simply by avoiding JFK8, its immediate surrounding area, and its employees. Instead, plaintiffs and the public risk exposing themselves to COVID-19 nearly anywhere in this country and the world.
>
> Both plaintiffs' concern and their risk present a difference in degree, not kind, from the injury suffered by the public at large and thus is not actionable in a private action for public nuisance.

498 F. Supp. 3d 359, 371 (E.D.N.Y. 2020).

Accordingly, the District cannot be responsible for causing a public nuisance because it did not cause the COVID-19 pandemic. Remaining open without mandatory masking is also not a public nuisance, because as explained above, like a workplace, the risk of exposure to COVID-19 is everywhere regardless of the mitigation strategies taken by an individual entity.

Finally, public policy dictates dismissal of Plaintiff's nuisance claim. Specific mitigation tactics, like masks, are not required in Wisconsin as a matter of law. Schools and other public entities must make decisions about how to best serve the public under evolving circumstances. Permitting a nuisance claim to proceed against a public school district because it did not require mandatory masking would open the floodgates for specious lawsuits. Every public entity that remained open without requiring masks would be creating a public nuisance. Simply remaining open during the pandemic cannot be a basis for liability. Even if Plaintiff had sufficiently alleged any of the elements of a public nuisance, recovery should be denied on public policy grounds as well. This cause of action must be dismissed.

## IV.     THE CLASS ALLEGATIONS MUST BE DISMISSED WITH PLAINTIFF'S CASE.

Plaintiff includes completely conclusory class action allegations in the Complaint, purporting to assert claim on behalf of the amorphous class of "all K-12 students attending public schools in the state of Wisconsin who have become infected with COVID-19 at school." Compl., ¶ 86. Plaintiff also purports to bring this claim against all Wisconsin public school district "failing implement CDC and DPI guidelines and recommendations for COVID-19 mitigation." *Id.* at ¶ 87.

Because Plaintiff's Complaint fails to state a claim for relief, he is no longer eligible to serve as a representative of a proposed class. *See Landsman & Funk, P.C. v. Lorman Bus. Ctr., Inc.*, No. 08-cv-481-bbc, 2009 U.S. Dist. LEXIS 18114, at *18-20 (W.D. Wis. Mar. 9, 2009) ("Plaintiff's complaint will be dismissed for failure to state a claim, disqualifying plaintiff as a proper class representative."). Likewise, where the reasons for dismissing Plaintiff's claim would apply equally to any other purported member of the class, the class action dies with Plaintiff's case. *Cowen v. Bank United, FSB*, 70 F.3d 937, 941 (7th Cir. 1995).

Even if this case could still be maintained, a class action would be inappropriate as Plaintiff fails to satisfy Fed. R. Civ. P. 23's requirements:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P 23(a).

The claims asserted are not conducive to resolution as a class. Every school district in the state has addressed the return to in person learning differently, and one student's situation in contracting COVID-19 cannot be extrapolated to every student in the state. The class of plaintiffs and defendants are so broad as to be meaningless. While Plaintiff cannot sustain his own claim, a class actions is still inappropriate.

## <u>CONCLUSION</u>

For the reasons set forth above, the District respectfully requests that the Court grant its motion to dismiss and dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated this 23rd Day of November, 2021.

KOPKA PINKUS DOLAN PC
Attorneys for Defendant

By:   /s/ Ronald S. Stadler
      Ronald S. Stadler
      State Bar No. 1017450
      Jonathan E. Sacks
      State Bar No. 1103204

N19W24200 Riverwood Dr, Suite 140
Waukesha, WI 53188-1191
telephone: 847-549-9611
facsimile: 847-549-9636
e-mail: rsstadler@kopkalaw.com
      jesacks@kopkalaw.com